**SILLS CUMMIS & GROSS P.C.**
Jeffrey J. Greenbaum, Esq.
S. Jason Teele, Esq.
Jason L. Jurkevich, Esq.
Gregory Kopacz, Esq.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000 (Telephone)
*Counsel to the Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al.* [1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-14539 (JKS)<br><br>(Jointly Administered) |
| In re:<br><br>SOUTH CHRISTOPHER COLUMBUS CAPITAL 1499, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BOWER LEWIS THROWER ARCHITECTS LTD. and U.S. CONSTRUCTION, INC.<br><br>Defendants. | Adv. Pro. No. _____ |

**ADVERSARY COMPLAINT**

Plaintiff South Christopher Columbus Capital 1499, LLC ("Plaintiff" or "SCCC"), on behalf of itself and its affiliates (together with Plaintiff, collectively, the "Debtors"), by and

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NRIA. The location of the Debtors' service address is: 1 Harmon Plaza, Floor 9, Secaucus, New Jersey 07094.

through their undersigned counsel, by way of this complaint (the "Complaint") against Defendants Bower Lewis Thrower Architects Ltd. ("BLTA") and U.S. Construction, Inc. ("USC") (collectively "Defendants"), avers as follows:

## INTRODUCTION[2]

1. This is an adversary proceeding by Plaintiff challenging the validity and enforceability of assignments to Plaintiff of two architect agreements initially between BLTA and USC for the provision of architectural services in connection with the building and development of a waterfront mixed-use residential complex at 1401 South Christopher Columbus Boulevard, Philadelphia, Pennsylvania ("Project").

2. Plaintiff seeks to avoid, as fraudulent transfers, both assignments. The assignments, both dated May 31, 2022, immediately saddled Plaintiff with hundreds of thousands of dollars of financial obligations with no discernable benefit flowing to Plaintiff, just one week before Plaintiff and the other Debtors filed their Bankruptcy Petition on June 7, 2022 ("Petition Date").

3. Even if they were not avoidable fraudulent transfers, neither of the assignments took effect, as their effectiveness was explicitly conditioned upon Plaintiff's payment of over $730,000 to BLTA, which payment never occurred.

4. In addition to the purported assignments, Plaintiff also seeks to avoid a post-petition Mechanics' Lien filed by BLTA on June 21, 2022, in violation of the automatic stay.

5. The Lien is defective for two reasons. First, BLTA is not a proper claimant under

---

[2] The allegations in this Complaint are based upon the documents and information available to Plaintiffs at the time of this filing, and are subject to clarification, amendment, revision, or other modification in light of new documents and information, obtained through subsequent discovery in this action or the chapter 11 cases, or otherwise. No statement in this Complaint is intended to waive or impair any right of the Plaintiffs or the Debtors' estates with respect to the Defendants or any third parties and shall not have any estoppel effect with respect to any subsequent action brought against the Defendants or third parties. All rights of the Plaintiffs and the Debtors' estates with respect to the Defendants and third parties are expressly reserved.

the Pennsylvania Mechanics' Lien Law.  Second, even if BLTA were a proper claimant, the Lien does not relate back to before the Petition Date, under the Pennsylvania Mechanics' Lien Law, because no visible work of erecting or constructing the Project ever commenced.  As a result, the Lien is an improper post-petition lien.

## JURISDICTION

6. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b) and the Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, entered on July 23, 1984 and amended on September 18, 2012.

7. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C) and (O). Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Plaintiffs consent to the entry of final orders or judgments by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

8. Venue of this action is proper in the Bankruptcy Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The statutory and legal predicates for the relief requested herein are sections 105, 362, 502, 541 544, 548, 550 and 558 of the Bankruptcy Code.

## PARTIES

10. SCCC is a Delaware Limited Liability Company with its principal place of business at 1 Harmon Plaza, Secaucus, NJ 07094.

11. Defendant BLTA is a corporation organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 1216 Arch Street, Philadelphia, Pennsylvania, 19107.

12. Defendant USC is a corporation organized under the laws of the State of Nevada, with its principal place of business located at 400 Market Street, Suite 415, Philadelphia, Pennsylvania, 19106.

## FACTS COMMON TO ALL COUNTS

A. **May 31, 2022 Assignment Agreements**

13. SCCC is the owner of real property located at 1401 South Christopher Columbus Boulevard, Philadelphia, Pennsylvania, 19148, which has been referred to both as "1401 South Columbus" and as "1499 South Columbus" ("Property").

14. Prior to the Petition Date, BLTA, as subcontractor, was retained by USC, as general contractor, for architectural design and certain construction administration services with respect to the Project.

15. In particular, on or about September 3, 2019, BLTA entered into that certain Architect Agreement with USC (identified as BLTA Project # 1915000) and, on or about May 17, 2021, BLTA entered into a second Architect Agreement with USC (identified as BLTA Project # 1915200) (together, the "BLTA Agreements"). Copies of the BLTA Agreements are attached hereto as Exhibit A and Exhibit B, respectively.

16. SCCC was not a party to either of the BLTA Agreements.

17. The BLTA Agreements provided that, as part of its Basic Services, BLTA would provide "usual and customary structural, mechanical, and electrical engineering, landscape architecture, lighting, IT and acoustical design services," as well as interior design services." (BLTA Agreements, § 3.1.)

18. In addition, although the BLTA Agreements also provided for certain contract administration services during the construction phase, including the requirement to "visit the site

at intervals," BLTA was not required "to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work." (BLTA Agreements, §§ 3.6.1.1, 3.6.2.1.)

19. Moreover, the BLTA Agreements explicitly excluded "on-site project representation" from the list of supplemental services available. (BLTA Agreements, §§ 4.1.1.13.)

20. Pursuant to two Assignment Agreements, dated May 31, 2022 (the "Assignment Agreements"), USC assigned all of its rights under both BLTA Agreements to SCCC. Copies of the Assignment Agreements are attached hereto as Exhibit C and Exhibit D, respectively.

21. Pursuant to the Assignment Agreements, SCCC agreed "to be bound by all of the terms, conditions, and liabilities of the Assigned Contract[s], and further agreed to pay BLTA $737,444.00 for services for Phases I and II of the Project that BLTA had already performed but which USC had not paid ("Amount Due").

22. At the time the Assignment Agreements were executed, NRIA had already paid USC several million dollars in various fees for its role as general contractor and co-developer of the Project. Among USC's obligations in return for those fees was the obligation to procure architectural services for the Project.

23. No construction work at the Project was ever commenced.

24. At the time the Assignment Agreements were executed, NRIA, Plaintiff and the other Debtors were insolvent. Indeed, Debtors filed for bankruptcy protection just one week following execution of the Assignment Agreements.

25. The effectiveness of both Assignment Agreements was explicitly conditioned upon SCCC's payment of the Amount Due to BLTA, which was supposed to be made within five business days.

26. Paragraph 1 of the Assignment Agreements explicitly stated that the assignment was "[c]onditioned upon payment of the amount set forth in paragraph 2 below to the Architect."

27. In addition to setting forth the amount due under each of the Assignment Agreements, Paragraph 2 further reiterated that the Agreements "shall become effective immediately and without further action upon payment by Assignee of the Amount Due."

28. Neither SCCC nor any other Debtor paid BLTA the Amount Due pursuant to the Assignment Agreements. Instead, as noted previously, a week after executing the Assignment Agreements, the Debtors filed for Bankruptcy.

B. **BLTA's Post-Petition Mechanic's Lien dated June 21, 2022 and Proofs of Claim**

29. Two weeks after the Petition Date, on June 21, 2022, BLTA filed a Mechanics' Lien in the amount of $737,444.00 ("Mechanics' Lien"). A copy of the Mechanics' Lien (without exhibits), is attached hereto as Exhibit E.

30. On August 3, 2022, BLTA filed a notice of filing and perfection of lien pursuant to Bankruptcy Code sections 362(b)(3) and 546(g) [Docket No. 238] (the "Lien Notice"), pursuant to which BLTA asserted that it had the right to file and perfect the Mechanics' Lien in the amount of $737,444.00, plus interest at the highest rate allowed by law, plus all other costs and expenses incurred by BLTA, including attorneys' fees. A copy of the Lien Notice (without exhibits) is attached hereto as Exhibit F.

31. Also on August 3, 2022 BLTA filed a purportedly secured proof of claim in the amount of $737,444.00, Claim No. 4, Case No. 14667 (the "BLTA Secured Claim"). A copy of the BLTA Secured Claim is attached hereto as Exhibit G.

32. BLTA claimed its Mechanics' Lien as the basis for the BLTA Secured Claim.

33. On October 3, 2022, BLTA filed a motion to compel the Debtors to assume or reject the BLTA Agreements [Docket No. 811].

34. On December 8, 2022, this Court entered a Consent Order and Stipulation authorizing the Debtors to reject the BLTA Agreements and the Assignment Agreements, effective as of December 3, 2022 [Docket No. 1652] ("Consent Order"). A copy of this Consent Order is attached hereto as Exhibit H.

35. The Consent Order explicitly provided that SCCC's rejection of the Assignment Agreements and BLTA Agreements was authorized without waiving any claims or defenses with respect to those Agreements.

36. Paragraph 1 of the Consent Order stated:

> Without admitting that the Assignment Agreements or Architect Agreements are valid or effective as against Debtor, or that Debtor is a party to the Architect Agreements, to the extent they are valid and to the extent they are "executory" within the meaning in section 365(a) of Title 11 of the United States Code (the "Bankruptcy Code"), the Assignment Agreements and Architect Agreements shall be deemed rejected as of December 3, 2022 (the "Rejection Date").

37. Paragraph 4 of the Consent Order further emphasized the parties' reservation of rights with respect to the Assignment Agreements and the BLTA Agreements:

> The Parties reserve any and all rights, claims, interests, objections, and/or defenses, under both bankruptcy, and non-bankruptcy law, with respect to the validity, effectiveness, enforceability, and avoidability of the Assignment Agreements, the Architect Agreements, the Mechanics' Lien Claim, the Proof of Claim, the Rejection Damages' Claim and any other rights and alleged obligations by and between Debtor and BLTA. This Stipulation is without prejudice to any and all other rights and remedies of the Parties and nothing in this Stipulation shall be preclusive or construed as an admission or determination of any matter, including, but not limited to, any assertions that the Assignment Agreements or the Architect Agreements are valid, effective, or enforceable against the Debtor or its estate, that the Debtor is a party to the Architect Agreements, or that the Assignment Agreements or the Architect Agreements are executory contracts within the meaning of section 365(a) of the Bankruptcy Code. (emphasis in original.)

38. Following entry of the Consent Order, on December 29, 2022, BLTA filed two unsecured proofs of claims in Case no. 14667 – Claims no. 56 and 57 ("BLTA Unsecured Claims") – each of which purported to assert a claim in the amount of $507,526.40, which BLTA claimed were its damages incurred as a result of SCCC's rejection of the Assignment Agreements and BLTA Agreements. Copies of the BLTA Unsecured Claims are attached hereto as Exhibit I and Exhibit J, respectively.

## COUNT I
### AVOIDANCE OF FRAUDULENT TRANSFER –
### 11 U.S.C. §§ 544(b), 548(a), 550 and 12 Pa.C.S. § 5104(a)
### (AS TO THE ASSIGNMENT AGREEMENTS)

39. Plaintiffs repeat and reallege all prior applicable allegations as if fully set forth herein.

40. On May 31, 2022, just one week before the Petition Date, Plaintiff, USC and BLTA executed the Assignment Agreements.

41. Pursuant to the terms of the Assignment Agreements, Plaintiff incurred the obligation to pay BLTA the Amount Due under each of the Assignment Agreements, and further incurred the obligation to abide by all other terms, conditions, and liabilities of the BLTA Agreements that, theretofore, were the obligations of USC.

42. At, prior to, and after the time of the incurrence of the obligations under the Assignment Agreements, creditors had claims against Plaintiff.

43. Plaintiff received less than reasonably equivalent value in exchange for the incurrence of the obligations under the Assignment Agreements because Plaintiff and/or its affiliate NRIA had already paid millions of dollars of fees and expenses to USC as general contractor and co-developer of the Project in exchange for which USC was contractually obligated to, among other things, obtain architectural plans for the Project.

44. Upon information and belief, no later than the date of the Assignment Agreements: (i) Plaintiff was insolvent or became insolvent as a result of such obligation, (ii) Plaintiff was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with Plaintiff was an unreasonably small capital; and/or (iii) Plaintiff intended to incur, believed that it would incur or reasonably should have believed that it would incur, debts that would be beyond Plaintiff's ability to pay as such debts matured.

45. Pursuant to Section 544(b) of the Bankruptcy Code, Plaintiffs (as debtors in possession) may void any transfer of an interest of the debtor in property that is voidable under applicable law by a creditor holding an unsecured claim.

46. Any obligation incurred by Plaintiff under the Assignment Agreements was made within two years before the Petition Date and is voidable pursuant to 11 U.S.C. § 548(a).

47. Any obligation incurred by Plaintiff under the Assignment Agreements was within four years before the petition date and is voidable pursuant to 11 U.S.C. § 544(b) and 12 Pa.C.S. §§ 5104(a) and 5109.

48. Based upon the foregoing, Plaintiff is entitled to a judgment avoiding each of the Assignment Agreements.

## COUNT II
### DECLARATORY JUDGMENT – 28 U.S.C. §§ 2201 and 2202
### (INVALIDITY OF ASSIGNMENT AGREEMENTS)

49. Plaintiffs repeat and reallege all prior applicable allegations as if fully set forth herein.

50. As set forth more fully above, the effectiveness of both Assignment Agreements was explicitly conditioned upon SCCC's payment of the Amount Due to BLTA.

51. SCCC never paid BLTA the Amount Due under either Assignment Agreement.

52. Because SCCC never paid BLTA the Amount Due under the Assignment Agreements, the Assignments of the BLTA Agreements never took effect.

53. As a result of the foregoing, SCCC is entitled to a declaratory judgment that it never assumed any obligations or liability under the BLTA Agreements.

## COUNT III
## AVOIDANCE OF MECHANICS' LIEN
## 11 U.S.C. § 544(b), 49 Pa.C.S. § 1101 *et seq.*

54. Plaintiffs repeat and reallege all prior applicable allegations as if fully set forth herein.

55. Pursuant to Section 544(b) of the Bankruptcy Code, Plaintiffs (as debtors in possession) may void any transfer of an interest of the debtor in property that is voidable under applicable law by a creditor holding an unsecured claim.

56. Under Pennsylvania's Mechanics' Lien Law, no lien shall be allowed in favor of any person other than a "contractor" or "subcontractor," as those terms are defined by statute.

57. An architect or engineer is not considered a "contractor" under Pennsylvania law unless – in addition to preparing drawings, specifications and contract documents – the architect or engineer, by contract with the owner, "also superintends or supervises" the erection, construction, alteration or repair of an improvement. See 49 Pa.C.S. § 1201 (definition of "contractor").

58. An architect or engineer who contracts with a contractor or subcontractor is not considered a "subcontractor" under Pennsylvania law. See 49 Pa.C.S. § 1201 (definition of "subcontractor").

-10-

59. BLTA only contracted with USC, which served as SCCC's general contractor for the Project. As a result, BLTA is not a "subcontractor" entitled to file a Mechanics' Lien under Pennsylvania Law.

60. To the extent it is determined that BLTA contracted with the owner of the Property, the BLTA Agreements did not provide for BLTA to superintend or supervise the erection, construction, alteration or repair of any improvement in connection with the Project. At most, the BLTA Agreements only required periodic visits to the site. As a result, BLTA is not a "contractor" entitled to file a Mechanics' Lien under Pennsylvania Law.

61. Because BLTA was neither a contractor nor subcontractor, it was not entitled to file its Mechanics' Lien.

62. Based upon the foregoing, Plaintiff is entitled to a judgment avoiding BLTA's Mechanics' Lien.

**COUNT IV**
**AVOIDANCE OF MECHANICS' LIEN**
**11 U.S.C. §§ 362, 544(b), 546(b) and 49 Pa.C.S. § 1508**

63. Plaintiffs repeat and reallege all prior applicable allegations as if fully set forth herein.

64. Pursuant to Section 544(b) of the Bankruptcy Code, Plaintiffs (as debtors in possession) may void any transfer of an interest of the debtor in property that is voidable under applicable law by a creditor holding an unsecured claim.

65. Plaintiff's petition for bankruptcy protection, filed on June 7, 2022, operated as an automatic stay of, among other things, any act to create, perfect or enforce any lien against property of Plaintiff's estate.

66. On June 21, 2022 – two weeks after the Petition Date and in violation – BLTA filed its Mechanics' Lien.

67. Notwithstanding the automatic stay, BLTA claimed in its Notice of Lien that it was entitled to perfect its lien because, under Pennsylvania law, it was entitled to file and perfect its lien within six months of January 31, 2022, when BLTA claimed it last provided labor and services on the Property.

68. Even if BLTA were a proper claimant under Pennsylvania's Mechanics' Lien Law, under 49 Pa.C.S. § 1508, BLTA's post-petition Mechanics' Lien would only relate back to the "visible commencement upon the ground of the work of erecting or constructing the improvement at the Property."

69. There was never any visible commencement of any work to erect or construct any improvement at the Property.

70. Because BLTA's Mechanics' Lien did not relate back to before the Petition Date, the Mechanics' Lien constituted a violation of the automatic stay under 11 U.S.C. § 362(a)(4).

71. Based upon the foregoing, Plaintiff is entitled to a judgment avoiding BLTA's Mechanics' Lien.

## COUNT V
## DISALLOWANCE OF CLAIMS – 11 U.S.C. § 502(b) and (j)

72. Plaintiffs repeat and reallege all prior applicable allegations as if fully set forth herein.

73. For the reasons set forth above, the Assignment Agreements are avoidable fraudulent transfers and/or never took effect as a result of the failure of a condition precedent. As a result, BLTA has no basis to assert any claims for breach of contract or for rejection damages against Debtors.

74.     For the reasons set forth above, BLTA was not entitled to file its Mechanics' Lien pursuant to Pennsylvania law.  Even if BLTA were entitled to do so, its Mechanics' Lien did not relate back to a pre-Petition date and, as a result, should be avoided as being in violation of the automatic stay.  As a result, BLTA has no perfected security interest against Debtors.

75.     Pursuant to section 502(b) of the Bankruptcy Code, all of BLTA's claims against Debtors relating to the BLTA Agreements, the Assignment Agreements, and/or its Mechanics' Lien – including but not limited to the BLTA Secured Claim and the BLTA Unsecured Claims – should be disallowed.

76.     Pursuant to section 502(j) of the Bankruptcy Code, any and all previously allowed claims of BLTA against Debtors relating to the BLTA Agreements, the Assignment Agreements, and/or its Mechanics' Lien – including but not limited to the BLTA Secured Claim and the BLTA Unsecured Claims, as well as any claims for post-petition interest – should be disallowed.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request entry of a final judgment against the Defendant as follows:

77.     On Count 1, awarding judgment in favor of Plaintiff and against Defendants avoiding the Assignment Agreements;

78.     On Count 2, awarding declaratory judgment in favor of Plaintiff and against Defendants that the assignment of the BLTA Agreements from USC to Plaintiff never took effect under the Assignment Agreements;

79.     On Counts 3 and 4, awarding judgment in favor of Plaintiff and against BLTA avoiding its Mechanics' Lien;

80. On Count 5, awarding judgment in favor of Plaintiff and against BLTA disallowing any of its claims against the Debtors based on the BLTA Agreements, the Assignment Agreements or its Mechanics' Lien, as well as any claims for post-petition interest;

81. Awarding Plaintiffs attorney's fees to the extent permitted by law;

82. Awarding Plaintiffs interest and cost of suit; and

83. Awarding such other and further relief as the Court deems just and proper.

Dated: July 11, 2023                            **SILLS CUMMIS & GROSS P.C.**

*/s/ Jeffrey J. Greenbaum*
Jeffrey J. Greenbaum, Esq.
S. Jason Teele, Esq.
Gregory Kopacz, Esq.
Jason L. Jurkevich, Esq.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000 (Telephone)
jgreenbaum@sillscummis.com
steele@sillscummis.com
gkopacz@sillscummis.com
jjurkevich@sillscummis.com
*Counsel to the Debtors and Debtors-in-Possession*